IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PATRICK EDWARD BROWN, | § | |
| TDCJ No. 2142302, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:19-cv-761-N-BN |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Patrick Edward Brown filed a *pro se* application for habeas

relief under 28 U.S.C. § 2254. Dkt. No. 3. His habeas action was referred to the

undersigned United States Magistrate Judge for pretrial management under

28 U.S.C. § 636(b) and a standing order of reference from the presiding United

States district judge. Brown collaterally attacks his Dallas County convictions

for third-degree evading arrest or detention by use of a vehicle and theft of a

person.

> Essentially, Brown had been treated for a suspected drug
> overdose at a hospital. Due to the mental illness that he was
> exhibiting, the Hospital attempted to transfer him to a mental
> health facility. Even though Brown was placed in a
> straightjacket, he threatened to wreck the van. When the drivers
> stopped the van to discuss the situation, Brown removed his
> restraints and drove off in the van. He was stopped by the police
> after a short chase and taken to the mental health facility.

Dkt. No. 15-2 at 15 ("Findings of Fact, Conclusions of Law, and

Recommendation on Application for a Writ of Habeas Corpus").

1

Brown pleaded guilty to both charges. Dkt. No. 3 at 3. He received a five-year sentence for the evading-arrest charge and a two-year sentence for the theft-of-a-person charge. *See State v. Brown*, Nos. F-1624264-N and F-1624265-N (195th Jud. Dist. Ct., Dallas Cnty., Tex. June 26, 2017). In accordance with the plea agreement, Brown filed no direct appeal or petition for discretionary review. *See* Dkt. No. 3 at 13. Brown did, however, file an application for a writ of habeas corpus in state court. On January 30, 2019, the Texas Court of Criminal Appeals ("TCCA") denied Brown's habeas application on the findings of the trial court without a hearing. *See Ex parte Brown*, WR-88,321-01 (Tex. Crim. App. Jan. 30, 2019).

Brown then filed a *pro se* 28 U.S.C. § 2254 habeas petition [Dkt. No. 3] on March 27, 2019. The State filed a response, *see* Dkt. No. 14, and Brown filed a reply, *see* Dkt. No. 18.

The undersigned now enters these findings of facts, conclusions of law, and recommendation that the Court should deny federal habeas relief.

### Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

2

Under the AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2254(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in

3

justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted)). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long

as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases

where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was

objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination. … In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed."

*Will*, 978 F.3d at 942.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

### A.    The Court lacks jurisdiction over any claims concerning the theft-of-a-person conviction

The State contends that this Court lacks jurisdiction over any claims related to the theft-of-a-person conviction, as the sentence for that conviction has discharged. The undersigned agrees. Brown received a two-year sentence for the theft-of-a-person charge. The sentence began to run on September 5, 2016 and was discharged on September 5, 2018. *See* Dkt. No. 14-1 at 3.

A federal court lacks subject matter jurisdiction to entertain a Section 2254 action if, at the time the habeas petition is filed, the prisoner is not "in custody" under the conviction and sentence he seeks to attack. *See Hendrix v. Lynaugh*, 888 F.2d 336, 337 (5th Cir. 1989). Although a prisoner need not be physically confined to be "in custody" for the purposes of Section 2254, "once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Maleng v. Cook*, 490 U.S. 488, 492 (1989); *see also Hendrix*, 888 F.2d at 337-38 (adverse consequences of expired sentence, including possibility that conviction may be used to impeach future testimony and enhance future punishment, held insufficient to satisfy the "in custody" requirement of section 2254).

An exception to this general rule exists when the prior conviction is used to enhance another sentence that is being challenged. *See Lackawanna Cnty. Dist. Attorney v. Coss*, 532 U.S. 394, 402 (2001). But here, there is no dispute

that Brown's theft-of-a-person conviction was not used to enhance his sentence for evading arrest. *See* Dkt. No. 15 at 7. Thus, to the extent that Brown's claims concern his theft-of-a-person conviction, the Court lacks jurisdiction to consider them.

### B.    Ineffective Assistance of Counsel ("IAC")

In his federal habeas application, Brown asserts that his Sixth Amendment right to effective assistance of trial counsel was violated because (1) his first counsel, Ronald L. Goranson, failed to obtain physical evidence that would have contradicted the State's evidence; (2) Mr. Goranson failed to hand over to the second defense counsel, Ben A. Massar, the evidence from his investigation of the Sundance Mental Hospital in support of a potential involuntary intoxication defense; (3) Mr. Massar failed to investigate the potential involuntary intoxication defense initiated by Mr. Goranson; and (4) Mr. Massar coerced Brown to plead guilty, as Mr. Massar claimed that there was no evidence to support the involuntary intoxication defense. Dkt. No. 3 at 6-18.

#### (i)    *Brown's First IAC Claim is Procedurally Barred*

Brown raised various IAC theories in state court, but he did not assert the first theory raised in his Section 2254 application. *See* Dkt. No. 15-1 at 27-30. The factual and legal basis for the assertion that Brown's counsel was ineffective for failing to obtain physical evidence to contradict the State's evidence was therefore not "fairly presented to the" TCCA. To satisfy the

10

exhaustion requirement, a claim must be presented to the highest court of the state – here the TCCA – for review. *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 431 (1985). And to have been properly exhausted, "the state court system must have been presented with the same facts and legal theory upon which the petitioner bases his current assertions." *Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir. 2006) (citing *Picard v. Connor*, 404 U.S. 270, 275-77 (1971)).

Unexhausted claims should be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4. This is a codification of the judicially-created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9. Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264

11

(5th Cir. 2001).

An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. But Brown has not made that showing here, and his IAC claim that his counsel was deficient for failing to obtain physical evidence that would have contradicted the State's evidence is procedurally barred.

### (ii)    Standards for Analyzing IAC Claims

Turning to the remaining IAC grounds, the Court reviews the merits of properly exhausted IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is

satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons

[petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must

14

be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more

difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland. See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[1]

### (iii)    *Voluntariness of the Guilty Plea*

Turning to the merits, as for the claim that Brown's guilty plea was

---

[1] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

rendered involuntary by Mr. Massar's supposed psychological coercion, the state habeas court rejected this claim, finding instead that Brown's guilty plea was knowing and voluntary. *See* Dkt. No. 15-2 at 18. A challenge to a conviction obtained by a guilty plea is limited to issues of voluntariness, the defendant's understanding of the charges against him, and his understanding of the consequences of the plea. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Diaz v. Martin*, 718 F.2d 1372, 1376-77 (5th Cir. 1983) ("A plea of guilty is more than a confession of having acted with culpability; it is itself a conviction.") (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). And a plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *United States v. Amaya*, 111 F.3d 386, 398 (5th Cir. 1997). And a knowing and voluntary guilty plea waives all nonjurisdictional defects that occurred prior to the plea. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Bell*, 966 F.2d 914-915 (5th Cir. 1992). This waiver includes all claims of ineffective assistance of counsel, except those relating to the defendant's entry of a guilty plea. *See Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983). And, "[a]n ineffective assistance of counsel claim in the context of a guilty plea is subject to the same standard as any other ineffective assistance claim, *i.e.*, the standard set forth in *Strickland*." *Guerrero v. United States*, SA-17-CR-391-

XR-14, 2021 WL 1146006, at *2 (W.D. Tex. Mar. 24, 2021). In the guilty plea context, "'[p]rejudice' occurs if 'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded and would have insisted on going to trial.'" *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (quoting *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995)).

Here, Brown believes that his guilty plea was involuntary because his second counsel, Mr. Massar, downplayed or dismissed a potential involuntary intoxication defense that Brown's initial counsel, Ronald L. Goranson, had explored and discussed with Brown. Brown believes that Mr. Massar should have explored the defense further and advised him not to plead guilty based on it, and Mr. Massar's failure to do so amounted to psychological coercion – even though Brown already knew about the defense and the medical records allegedly supporting it. *See* Dkt. No. 3 at 8.

The state court did not err in rejecting this claim for multiple reasons. First, Mr. Massar provided affidavit testimony explaining why he did not pursue the involuntary intoxication defense:

> After review of reports, evaluations and meetings with Mr. Brown, I did not think that the defense of insanity or involuntary intoxication would be a viable defense to these indictments. Both of the evaluations indicated that Mr. Brown's disorders were caused by continued use of cocaine and his noncompliance with prior treatment plans. In addition, Mr. Brown indicated in the reports and evaluations that he used crack cocaine on or before the date of the offense.

Dkt. 15-4 at 5. The state court's decision to credit Mr. Massar's testimony on this issue is a factual determination deserving deference from this Court that

18

may only be upset through clear and convincing evidence, which Brown fails to provide. *See Gardiner v. Lumpkin*, CA No. H-20-0702, 2021 WL 765685, at *10 (S.D. Tex. Feb. 26, 2021) ("Credibility findings such as those made by the state habeas corpus court with respect to defense counsel's affidavit, are entitled to substantial deference on federal habeas review.") (citations omitted); *see also* 28 U.S.C. § 2254(e)(1). And "a failure to present one particular defense likely falls within the wide range of reasonable professional assistance described in *Strickland* – it could certainly be considered a tactical choice or sound trial strategy." *Temple v. Vannoy*, CA No. 18-1536, 2019 WL 3430489, at *5 (E.D. La. July 30, 2019). Thus, Mr. Massar's decision not to pursue the involuntary intoxication defense was a tactical choice and not violative of *Strickland*.

Second, review of the state-habeas-court record reveals that Brown's guilty plea was knowing and voluntary. Although transcripts of Brown's plea hearing are not available, the available record demonstrates that Brown signed a "Judicial Confession" and other guilty plea papers that included the "Court's Admonishments to Defendant" and "Defendant's Statements and Waivers." Dkt. No. 15-1 at 11-15. In these documents, Brown acknowledged his rights, stated that he is mentally competent, and understood the nature of the accusation against him. *Id.* at 12-13. He specifically confessed:

> On or about the 8th day of August, 2016, in Dallas, County, Texas, I did unlawfully, then and there intentionally flee from L. WILSON hereinafter called complainant, while complainant was lawfully attempting to arrest and detain the defendant, and the

> said defendant knew the said complainant was a peace officer and
> federal special investigator attempting to arrest and detain the
> said defendant.
> …
>
> And further, defendant did use a vehicle while in the flight from
> the said officer and investigator.
>
> …
>
> I further judicially confess that I committed the offense with
> which I stand charged exactly as alleged in the indictment in this
> cause.

*Id.* at 15-16. "Official documents – such as a written plea agreement – are 'entitled to a presumption of regularity and are accorded great evidentiary weight.'" *United States v. McDaniel*, 907 F.3d 366, 371 (5th Cir. 2018) (quoting *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)). Thus, the evidentiary record supports the state-court decision to deny relief on this ground.

And third, the state court credited the affidavit testimony of Mr. Massar, who testified as to the communication that he had with Brown concerning the plea:

> I met with Mr. Brown on several occasions and I was very clear
> to Mr. Brown as to the range of punishment. He clearly
> understood that in Cause number F16-24265 that if the jury
> found him guilty and also found the two paragraphs to be true,
> the range of punishment was 25 years to life in TDC and that the
> judge or jury could not assess punishment less than 25 years. I
> also told him that if the State were forced to try him to a jury that
> they were not going to withdraw the paragraphs to reduce the
> range to 2 to 10 years TDC.
>
> I did tell Mr. brown that I believed the State had a good case
> against him. However, the decision to plea or take the case to trial

> was completely his and that he had to do a risk/reward analysis,
> which I did with him. He was given all of his options that were
> available to him and he understood the situation.

Dkt. 15-4 at 5. The state court did not unreasonably apply *Strickland* to find

that Mr. Massar's communication and advice to Brown regarding the guilty

plea was constitutionally adequate.

   In sum, Brown specifically presented this theory of coercion to the state

court. Dkt. No. 15-1 at 28. But the trial court issued findings and conclusions

of law – which the TCCA adopted in full –finding that "Brown's decision to

plead guilty was not the result of coercion or duress by defense counsel but was

rather a strategic decision to avoid a stiffer sentence. Therefore, his plea was

knowing and voluntary." Dkt. No. 15-2 at 18. Given Mr. Massar's testimony,

along with the state-court documents showing that Brown understood the

nature and consequences of his guilty plea, Brown fails to show that the state

court proceedings resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly-established federal law, as determined by

the Supreme Court of the United States, or that the decision was based on an

unreasonable determination of facts in light of the evidence presented in the

State court proceeding. *See Williams*, 529 U.S. at 402-03; *Childress v. Johnson*,

103 F.3d 1221, 1224-25 (5th Cir. 1997). Thus, his claim that his guilty plea was

coerced should be rejected.

### (iv)    Remaining IAC Grounds

   As for Brown's second and third IAC grounds for relief – that Mr.

Goranson failed to hand over to Mr. Massar the evidence from his investigation of the Sundance Mental Health Hospital in support of the involuntary intoxication defense and that Mr. Massar failed to investigate the involuntary intoxication defense – these claims are nonjurisdictional and were waived by Brown's guilty plea. *See e.g.*, *Tollett*, 411 U.S. at 267; *Smith*, 711 F.2d at 682 ("Thus, because we have already held Smith's plea to be voluntary, it follows that his claims of ineffectiveness unrelated to the guilty plea are waived – *e.g.*, Johnson's alleged failure to review the prosecutor's file to verify laboratory test results that the substances Smith delivered were in fact heroin and cocaine; Johnson's alleged failure to investigate witnesses and the legality of Smith's arrest; or any other alleged failure of Johnson to find "holes" in the government's case against Smith."); *McGee v. Davis*, No. 3:17-cv-3332-G-BN, 2019 WL 1243879, at *5 (N.D. Tex. Feb. 20, 2019) ("McGee also alleges that he received ineffective assistance of counsel because his counsel 'never investigate[d] before putting [McGee] inside the Court Room so quickly,' and because his counsel failed to investigate/interview a possible defense witness. Because McGee's guilty plea was knowing and voluntary, these IAC claims are waived.").

And, even if these claims were not waived, Brown fails to show how he was prejudiced by Mr. Massar's alleged failure to investigate, as he does not explain what further investigation would have revealed. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a failure

to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."). Nor does Brown explain how he was prejudiced concerning the alleged failure of his attorneys to exchange information concerning the involuntary intoxication defense when he was already aware of the defense after discussions with Mr. Goranson.

In sum, the state court's rejection of Brown's IAC claims was appropriate under 28 U.S.C. § 2254(d).

### C. Due Process Claims

The undersigned agrees with the State that Brown also makes the following due process claims: (1) that Mr. Massar coerced him into pleading guilty after abandoning the involuntary intoxication defense; (2) that the State suppressed or altered evidence supporting his involuntary intoxication defense; and (3) that he was subjected to a psychological evaluation, which amounted to him testifying against himself. *See generally* Dkt. No. 3 at 6-18.

The due process ground related to voluntariness is addressed above in the IAC analysis. As for the latter two grounds for relief – that the prosecution suppressed or altered evidence supporting an involuntary intoxication defense and that Brown was subjected to an improper psychological evaluation – the State argues that Brown failed to exhaust these claims before the TCCA. The undersigned agrees. Here, Brown failed to raise claims that the State suppressed or altered evidence or forced him to testify against himself through

a psychological examination to the TCCA, and, thus, he failed to exhaust these grounds for relief.

Again, unexhausted claims should be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1. And, under Texas' judicially-created abuse-of-the-writ doctrine, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See Barrientes*, 221 F.3d at 758 n.9.

An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. But Brown has not made that showing here, and his due process claims related to the suppression or alteration of evidence by the prosecution and his being forced to take part in an impermissible psychological evaluation are procedurally barred.

But, even were the Court to review these claims *de novo*, they fail nonetheless. The Fifth Circuit has held that the failure to produce exculpatory materials before a guilty plea does not constitute grounds for federal habeas

corpus relief. *See Orman v. Cain*, 228 F.3d 616, 617 (5th Cir. 2000) ("First, we reiterate our ruling in *Matthew v. Johnson*, 201 F.3d 353, 361-62 (5th Cir. 2000), *cert denied*, 532 U.S. 830, 121 S.Ct. 291, 148 L.Ed.2d 44 (2000), that *Brady* requires a prosecutor to disclose exculpatory evidence for purposes of ensuring a fair trial, a concern that is absent when a defendant waives trial and pleads guilty. Because the Supreme Court has yet to extend *Brady* to guilty pleas (let alone extend it retroactively), the district court erred in requiring the Louisiana courts to do so."). Further, by pleading guilty, Brown also waived his rights against "compulsory self-incrimination guaranteed by the fifth amendment." *Brown v. Butler*, 811 F.2d 938, 940 (5th Cir. 1987) (citing *Boykin*, 395 U.S. at 243); *United States v. Escandar*, 465 F.2d 438, 441 (5th Cir. 1972)). Thus, Brown's due process claims related to the suppression or alteration of evidence and an improper psychological evaluation are procedurally defaulted or, in the alternative, substantively meritless.

## Recommendation

The Court should deny Brown's application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made,

state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SO ORDERED.

DATED: April 8, 2021

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE